UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
West Palm Beach Division
www.flsb.uscourts.gov

In re:                                                    Chapter 11

TOOJAY'S MANAGEMENT LLC,                                   Case No. 20-14792-EPK


       Debtor.
_____/

**DEBTORS' EMERGENCY APPLICATION FOR
APPROVAL, ON AN INTERIM AND FINAL BASIS, OF EMPLOYMENT
OF MICHAEL I. GOLDBERG, EYAL BERGER, AND THE LAW FIRM
OF AKERMAN LLP AS GENERAL BANKRUPTCY COUNSEL FOR THE
DEBTORS-IN-POSSESSION EFFECTIVE AS OF THE PETITION DATE**

**(Emergency Hearing Requested for May 1, 2020)**

**Statement of Exigent Circumstances**
**Without general bankruptcy counsel, the Debtors are technically unable to
proceed with this case. Akerman LLP will play an integral role in the first
21 days of this Chapter 11 case. Among other things, the Debtors will need
Akerman LLP's assistance in filing schedules, stabilizing business
operations and addressing issues related to the "first day" hearings and
related orders. The Debtor certifies that it has made a bona fide effort to
resolve the matter without hearing.**

The Debtors, as defined herein, pursuant to 11 U.S.C. § 327(a), Fed. R. Bankr. P. 2014
and 2016, and Local Rules 2014-1(A), 2016-1(A), and 9075-1 hereby file this *Emergency
Application for Approval, on an Interim and Final Basis, of Employment of Michael I. Goldberg,
Eyal Berger and the law firm of Akerman LLP as General Bankruptcy Counsel for the Debtors-
in-Possession Effective as of the Petition Date* (the "Application") seeking approval, on interim
and final basis, of the employment of Michael I. Goldberg and Eyal Berger ("Berger") and the
law firm of Akerman LLP ("Akerman"), to represent the Debtors as general bankruptcy counsel
in the Debtors' Chapter 11 cases, effective as of the Petition Date. In support of this Application,
the Debtors rely upon the *Declaration of Eyal Berger on behalf of Akerman LLP, as Proposed*

*Counsel for the Debtor-In-Possession* attached hereto as **Exhibit "A"** (the "Berger Declaration") and the *Declaration of Edward Maxwell Piet in Support of the Debtor's Chapter 11 Petition and Request for First Day Relief* (the "First Day Declaration").

In further support of this Application, the Debtors respectfully represent as follows:

## I.    JURISDICTION

1.      This Court has jurisdiction over this case pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).  Venue is proper in this District pursuant to 28 U.S.C. § 1408.  The statutory predicate for the relief requested herein is 11 U.S.C. § 327(a), Fed. R. Bankr. P. 2014 and 2016, and Local Rules 2014-1(A) and 2016-1(A).

## II.    BACKGROUND AND BUSINESS OPERATIONS

2.      On or about April 29, 2020 ("Petition Date"), TOOJAY'S MANAGEMENT LLC and TJ ACQUISITION, LLC (collectively "Debtors")[1] filed voluntary petitions ("Petitions") in this Court for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").  A motion for joint administration of these Chapter 11 cases will be filed.

3.      As of the date hereof, no creditor committees have been appointed in any case. In addition, no trustees or examiners have been appointed.

4.      The Debtors are operating their businesses and managing their affairs as debtors in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtors' federal tax identification number, are: TooJay's Management LLC (0443) and TJ Acquisition, LLC (1455).  The following additional affiliates of Debtors have or will file Chapter 11 Cases (collectively, "Filing Affiliates"): TooJay's Altamonte, L.L.C. (5466), TooJay's at Dr. Phillips, L.L.C. (8342), TooJay's Bakery & Commissary, L.L.C. (7016), TooJay's Boynton Oakwood Square, L.L.C. (3583), TooJay's Colonial, L.L.C. (6530), TooJay's Coral Springs, L.L.C. (5919), TooJay's Dania Beach, L.L.C. (2030), TooJay's Downtown Gardens, L.L.C. (0351), TooJay's Downtown Tampa, L.L.C. (5046), TooJay's Glades, L.L.C. (3884), TooJay's Hallandale, L.L.C. (4596), TooJay's Jupiter, L.L.C. (5986), TooJay's Lake Worth, L.L.C. (3353), TooJay's Naples, LLC (3336), TooJay's N Ft. Lauderdale, L.L.C. (8438), TooJay's of Lake Mary, LLC (0594), TooJay's of Ocoee, L.L.C. (9601), TooJay's of Sarasota, L.L.C. (7584), TooJay's of the Villages, L.L.C. (0798), TooJay's of West Boca, L.L.C. (8250), TooJay's Palm Beach, L.L.C. (1908), TooJay's Plantation, L.L.C. (8882), TooJay's Stuart, L.L.C. (4505), TooJay's Vero, L.L.C. (0750), TooJay's Villages III, L.L.C. (5254), TooJay's VLG II, L.L.C. (2492), TooJay's Waterford Lakes, L.L.C. (9363), TooJay's Wellington Commons, L.L.C. (3967), and TooJay's West Palm Beach, L.L.C. (4685).

5.      For a detailed description of the Debtors, their operations, assets and liabilities, the Debtors respectfully refer the Court and parties-in-interest to the First Day Declaration.

### III.    RELIEF REQUESTED

6.      By this Application, the Debtors seek to employ and retain Michael I. Goldberg, Esq., Eyal Berger, Esq. and the law firm of Akerman as its general restructuring and bankruptcy counsel with regard to the filing of their Chapter 11 petitions and the prosecution of their respective Chapter 11 cases.  Accordingly, the Debtors respectfully request the entry of an order pursuant to Section 327(a) of the Bankruptcy Code, followed by the entry of a final order to be entered at a hearing to be held twenty-one (21) days later, authorizing the Debtors to employ and retain Michael I. Goldberg, Eyal Berger, Esq. and the law firm of Akerman as its general bankruptcy counsel under a general retainer to perform the legal services that will be necessary during their Chapter 11 cases and that of their Filing Affiliates as more fully described below.

7.      Prior to the commencement of its Chapter 11 case, the Debtors sought the services of Akerman principally with respect the preparation for and potential commencement and prosecution of Chapter 11 case for the Debtor.  The Debtors believe that the continued representation by its pre-petition restructuring counsel, Akerman, is critical to the Debtors' efforts to restructure its business because Akerman has extensive experience and expertise in complex commercial reorganization cases and has become familiar with the Debtors' business, legal and financial affairs.  Akerman is qualified to practice in this court and qualified to advise the Debtors on their relations with, and responsibilities to, the creditors and other interested parties.  Accordingly, Akerman is well-suited to guide the Debtors through the Chapter 11 process.

A.    **Services to be Provided**

8.    The services of Akerman are necessary to enable the Debtors to execute faithfully their duties as debtors-in-possession.  Subject to order of this Court, the law firm of Akerman will be required to render, among others, the following services to the Debtors:

(a)    advise the Debtors with respect to their powers and duties as debtors and debtors-in-possession in the continued management and operation of its business and properties;

(b)    attend meetings and negotiate with representatives of creditors and other parties-in-interest and advise and consult on the conduct of the case, including all of the legal and administrative requirements of operating in Chapter 11;

(c)    advise the Debtors in connection with any contemplated sales of assets or business combinations, including the negotiation of sales promotion, liquidation, stock purchase, merger or joint venture agreements, formulate and implement bidding procedures, evaluate competing offers, draft appropriate corporate documents with respect to the proposed sales, and counsel the Debtors in connection with the closing of such sales;

(d)    advise the Debtors in connection with post-petition financing and cash collateral arrangements, provide advice and counsel with respect to pre-petition financing arrangements, and provide advice to the Debtors in connection with the emergence financing and capital structure, and negotiate and draft documents relating thereto;

(e)    advise the Debtors on matters relating to the evaluation of the assumption, rejection or assignment of unexpired leases and executory contracts;

(f)    provide advice to the Debtors with respect to legal issues arising in or relating to the Debtors' ordinary course of business including attendance at senior management meetings, meetings with the Debtors' financial and turnaround advisors, and provide advice on employee, workers compensation, employee benefits, labor, tax, insurance, securities, corporate, business operation, contracts, joint ventures, real property, press/public affairs and regulatory matters;

(g)    take all necessary action to protect and preserve the Debtors' estates, including the prosecution of actions on its behalf, the defense of any actions commenced against the estates, negotiations concerning all litigation in which the Debtors may be involved and objections to claims filed against the estates;

(h)    prepare on behalf of the Debtors all schedules, motions, pleadings, applications, adversary proceedings, answers, orders, reports and papers necessary to the administration of the estates;

52882247;2

(i)    negotiate and prepare on the Debtors' behalf a plan of reorganization, disclosure statement and all related agreements and/or documents, and take any necessary action on behalf of the Debtors to obtain confirmation of such plan;

(j)    attend meetings with third parties and participate in negotiations with respect to the above matters;

(k)    advise the Debtors with respect to their responsibilities in complying with the U.S. Trustee's Operating Guidelines and Reporting Requirements and with the rules of the court;

(l)    appear before this Court, any appellate courts, and the U.S. Trustee, and protect the interests of the Debtors' estates before such courts and the U.S. Trustee; and

(m)    perform all other necessary legal services and provide all other necessary legal advice to the Debtors in connection with the Chapter 11 cases.

9.    Akerman is willing to act on behalf of the Debtors as set forth above, and with respect to such Filing Affiliates.

B.    **Terms of Retention**

10.    Akerman was engaged by the Debtors for restructuring services on April 26, 2020 and in connection therewith received an initial retainer from Debtor, TOOJAY'S MANAGEMENT LLC, in the amount of $800,000 (the "Prepetition Retainer"), of which amount $62,000 (a total of $2,000 for each of the cases of Debtors and the Filing Affiliates) is a retainer to cover filing fees and other costs, and the remaining $738,000 is to cover professional fees in the Debtors' and Filing Affiliates' cases.  Of the Prepetition Retainer, Akerman has earned $57,572.48 at the time of the filing of the Petitions.  All fees and expenses incurred by Akerman, in excess of the Prepetition Retainer, shall be paid from a portion of the Debtors' cash collateral and future revenues upon approval of the Court.   A copy of the executed engagement letter is attached as **Exhibit "1"** to the Berger Affidavit.

11.    Akerman intends to apply to the Court for allowance of compensation for professional services rendered and reimbursement of charges and disbursements incurred in

these Chapter 11 cases in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules and the orders of this Court, including but not limited to for the filing fees associated with these Chapter 11 cases, which were charged on Akerman's corporate credit card after the Debtors' petitions were filed. Akerman will seek compensation for the services of each attorney and paraprofessional acting on behalf of the Debtors and Filing Affiliates in the Chapter 11 cases at the then-current rate charged for such services.

12.    Consistent with the firm's policy with respect to its other clients, Akerman will charge the Debtors for all services provided and for other charges and disbursements incurred in the rendition of services.  These charges and disbursements include, among other things, costs for telephone charges, photocopying, travel, computerized research, messengers, couriers, postage, witness fees and other fees related to trials and hearings.

13.    Akerman has agreed to accept as compensation such sums as may be allowed by the Court on the basis, among others, of the professional time spent, the rates charged for such services, the necessity of such services to the administration of the estates, the reasonableness of the time within which the services were performed in relation to the results achieved, and the complexity, importance and nature of the problems, issues or tasks addressed in this case.

14.    Other than as set forth herein and in the Berger Declaration, no arrangement is proposed between the Debtors and Akerman for compensation to be paid in this case, and no agreement or understanding exists between Akerman and any other entity for the sharing of compensation received or to be received for services rendered in or in connection with the case.

15.    No previous request for the relief sought in this Application has been made to this Court or any other Court.

## IV.    BASIS FOR RELIEF REQUESTED

16.    Continued representation of the Debtors by its restructuring counsel, Akerman, is critical to the success of the Debtors' reorganization efforts because Akerman is and has become familiar with the Debtors' business, financial and legal affairs.

17.    The Debtors have selected the firm of Akerman as its attorneys because of Akerman's experience with and knowledge of the Debtors and their businesses, including in connection with Akerman's prior representation of Debtors, as well as their extensive experience, knowledge and expertise in the field of debtors' and creditor rights and business reorganizations under Chapter 11 of the Bankruptcy Code.

18.    The Debtors desire to employ the firm of Akerman under a general retainer because of the extensive legal services that will be required in connection with this Chapter 11 case.

## V.    DISINTERESTEDNESS OF PROFESSIONALS

19.    As set forth in the Berger Declaration, to the best of the Debtors' knowledge, the shareholders, counsel and associates of Akerman: (a) do not have any connection with the Debtors, its creditors, the U.S. Trustee, any person employed in the office of the U.S. Trustee, or any other party in interest, or their respective attorneys and accountants; (b) are disinterested persons, as that term is defined in Section 101(14) of the Bankruptcy Code; and (c) do not hold or represent any interest adverse to the Debtors' estates.

20.    More specifically, as set forth in the Berger Declaration:

(a)    Neither Akerman nor any attorney at the firm holds or represents an interest adverse to the Debtors' estates.

(b)    Neither Akerman nor any attorney at Akerman is or was a creditor, an equity holder, or an insider of the Debtors, except that Akerman previously rendered legal services to the Debtors for which it was compensated.

52882247;2

(c)    Neither Akerman nor any attorney at Akerman is or was, within two years before the Petition Date, a director, officer or employee of the Debtors.

(d)    Akerman does not have an interest materially adverse to the interests of the Debtors' estates or of any class of creditors or equity security holders by reason of any direct or indirect relationship to, connection with, or interest in the Debtors, or for any other reason.

## VI.    REQUEST FOR INTERIM RELIEF

21.    Section 327(a) of the Bankruptcy Code provides that a debtor, subject to Court approval:

> [M]ay employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [debtor] in carrying out the [debtor]'s duties under this title.

11 U.S.C. § 327(a).

22.    Bankruptcy Rule 2014(a) Bankruptcy Rule 2014(a) requires that an application for retention include:

> [S]pecific facts showing the necessity for the employment, the name of the [firm] to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the [firm's] connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

Fed. R. Bankr. P. 2014.

23.    Pursuant to Bankruptcy Rule 6003, the court may grant relief regarding an application pursuant to Bankruptcy Rule 2014 to retain a professional within 21 days after the filing of the petition to the extent the relief is necessary to avoid immediate and irreparable harm. Bankruptcy Rule 6003, however, does not expressly forbid courts from entering interim orders approving professional retentions during the first 21 days of a chapter 11 cases. *See, e.g., First NLC Fin. Servs, LLC,* Case No. 08-10632 (Bankr. S.D. Fla. Jan. 28, 2008); *In re TOUSA, Inc., et*

*al.*, Case No. 08-10928-BKC-JKO (Bankr. S.D. Fla. Jan. 31, 2008) (approving interim retentions of financial advisor and legal counsel on interim basis within first 20 days of chapter 11 case).

24.    First, according to the Advisory Committee note to Bankruptcy Rule 6003, the standard employed in Bankruptcy Rule 6003 is taken from Bankruptcy Rule 4001(b)(2) and (c)(2), and decisions under those provisions should provide guidance for the application of Bankruptcy Rule 6003.  Bankruptcy Rules 4001(b)(2) and (c)(2) are well understood and are the model for numerous first-day motions, such as obtaining credit and seeking use of cash collateral.  That process is well established: if the court is so disposed, the partial relief is granted for the interim before the final hearing can be conducted. Later, after further opportunity for other parties in interest to consider the application and to object, the court, if so disposed will grant the balance of the relief requested.

25.    Second, Bankruptcy Rule 6003 is entitled "Interim and Final Relief Immediately Following the Commencement of the Case...." Thus, the very title of the Bankruptcy Rule contemplates that relief may be granted on an interim basis.

26.    Interim relief is clearly justified and appropriate in the context of this Application.

27.    It is well recognized in this district and others that a corporation must be represented by counsel to appear in court because it is merely an artificial entity that can only act through its agents and thus may not appear pro se. *See, e.g., Palazzo v. Gulf Oil Corp.,* 764 F.2d 1381, 1385 (11th Cir. 1985) ("Corporations and partnerships, both of which are fictional legal persons, obviously cannot appear for themselves personally . . . they must be represented by licensed counsel."); *see also In re K.M.A., Inc.*, 652 F.2d 398, 399 (5th Cir. 1981) ("The law is clear that a corporation as a fictional legal person can only be represented by licensed counsel."); *Jones v. Niagara Frontier Transp. Authority*, 722 F.2d 20, 22 (2d Cir. 1983) ("[I]t is established

that a corporation, which is an artificial entity that can only act through agents, cannot proceed *pro se*."). This requirement is further established by Local Rule 1074-1, which provides that "[c]orporations, partnerships, trusts and other non-individual parties may appear and be heard only through counsel permitted to practice in the Court pursuant to Local Rule 2090-1."

28.     Accordingly, without general bankruptcy counsel, the Debtors are technically unable to proceed with its case.  Akerman will play an integral role in the first 21 days of this Chapter 11 case.  Among other things, the Debtors will need Akerman's assistance in filing schedules, stabilizing business operations, negotiating with key creditor constituencies, addressing issues related to the "first day" hearing and related orders, constructing a business plan and plan of reorganization and defining the Debtors' paths post-restructuring.

29.     Accordingly, the Debtors submit that they have satisfied the requirements of Bankruptcy Rule 6003, which supports entry of an order authorizing the Debtors to retain and employ Akerman on an interim basis and to compensate Akerman for any services rendered during that interim period in accordance with the Bankruptcy Code and the interim compensation procedures that may be established in this case.  This interim form of relief ensures the availability of Akerman's full resources to the Debtors during a critical period in this case, while preserving the ability of all parties in interest, including the U.S. Trustee, to object to this application on a final basis.

**WHEREFORE**, the Debtors respectfully request that the Court enter an order in the form attached as **Exhibit "B"**: (i) authorizing the Debtors' retention of Michael I. Goldberg, Esq., Eyal Berger, Esq. and the law firm of Akerman, LLP on an interim basis upon the terms outlined in this Application effective as of the Petition Date; (ii) setting a final hearing on this

10

52882247;2

Application at least twenty-one (21) days from the date of the interim order; and (iii) granting

such other and further relief as is just and proper.

Date:  April 29, 2020

Respectfully submitted,

By:_____

ERIC KORSTEN, DIRECTOR of TJ ACQUISITION, LLC


By:_____
EDWARD MAXWELL PIET, CEO of TOOJAY'S MANAGEMENT LLC

52882247;2

Application at least twenty-one (21) days from the date of the interim order; and (iii) granting such other and further relief as is just and proper.

Date:  April 29, 2020

Respectfully submitted,


By:_____
ERIC KORSTEN, DIRECTOR of TJ ACQUISITION, LLC

By:_____
EDWARD MAXWELL PIET, CEO of TOOJAY'S MANAGEMENT LLC

52882247;2

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing was served this 29th

day of April, 2020 via CM/ECF to all parties listed on the below service list, and served via US

Mail on the parties on the 20 largest unsecured creditors of Debtors' estates.

**AKERMAN LLP**
Las Olas Centre II, Suite 1600
350 East Las Olas Boulevard
Fort Lauderdale, Florida 33301
Tel: (954) 463-2700
Fax: (954) 463-2224
*Proposed Attorneys for Debtors-in-Possession*

By: *Amanda Klopp, Esq.*
    Michael I. Goldberg, Esq.
    Florida Bar No. 886602
    michael.goldberg@akerman.com
    Eyal Berger, Esq.
    Florida Bar No. 11069
    eyal.berger@akerman.com
    Amanda Klopp, Esq.
    Florida Bar No. 124156
    amanda.klopp@akerman.com

## <u>SERVICE LIST</u>

**20-14792-EPK Notice will be electronically mailed to:**

Michael I Goldberg, Esq on behalf of Debtor TooJay's Management LLC
michael.goldberg@akerman.com, charlene.cerda@akerman.com

Office of the US Trustee
USTPRegion21.MM.ECF@usdoj.gov

52882247;2

# Exhibit A

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
West Palm Beach Division
www.flsb.uscourts.gov

In re:                                                              Chapter 11

TOOJAY'S MANAGEMENT LLC, et al.                                     Case No. 20-14792
                                                                    (Joint Administration
                                                                    Pending)

                        Debtors.
_____/

**DECLARATION OF EYAL BERGER, ESQ. IN SUPPORT OF THE DEBTORS'
EMERGENCY APPLICATION FOR APPROVAL, ON AN INTERIM
AND FINAL BASIS, OF EMPLOYMENT OF MICHAEL I. GOLDBERG,
EYAL BERGER, AND THE LAW FIRM OF AKERMAN LLP AS
GENERAL BANKRUPTCY COUNSEL FOR THE DEBTORS-IN-POSSESSION
<u>EFFECTIVE AS OF THE PETITION DATE</u>**

    Eyal Berger, Esq. makes this Declaration pursuant to 28 U.S.C. § 1746, and states:

    1.      I am an attorney and shareholder of the law firm of Akerman LLP ("<u>Akerman</u>")

with offices located in Fort Lauderdale, Florida.  I am familiar with the matters set forth herein

and make this Affidavit in support of the *Debtor's Emergency Application for Approval, on an*

*Interim and Final Basis, of Employment of Michael I. Goldberg, Eyal Berger and the Law Firm*

*of Akerman LLP as General Bankruptcy Counsel for the Debtor-in-Possession Effective as of the*

*Petition Date* (the "<u>Application</u>").  All terms not defined herein shall have the meaning ascribed

in the Application.

    2.      I am admitted to practice in the State of Florida, the United States District Court

for the Southern District of Florida and am qualified to practice in the U.S. Bankruptcy Court for

the Southern District of Florida.  Michael I. Goldberg is admitted to practice in the State of

Florida, the United States District Court for the Southern District of Florida and is qualified to

practice in the U.S. Bankruptcy Court for the Southern District of Florida.

52882247;2

3.      In support of the Application, I disclose the following:

a.      Unless otherwise stated, this Affidavit is based upon facts of which I have personal knowledge.

b.      In preparing this Affidavit, I have reviewed the list of all creditors and equity security holders of the Debtors provided to us by the Debtors.  Akerman maintains a computerized conflicts check system.  Akerman has compared the information obtained thereby with the information contained in its client and adverse party conflict check system on an expedited basis.  The facts stated in this Affidavit as to the relationship between Akerman and the Debtors, the Debtors' creditors, the United States Trustee, other persons employed by the Office of the United States Trustee, and those persons and entities who are defined as disinterested persons in Section 101(14) of the Bankruptcy Code, are based on the results of my review of Akerman's conflict check system.  Based upon such expedited search, Akerman does not represent any entity in any matter involving or adverse to the Debtors or which would constitute a conflict of interest, except as provided herein, or impair the disinterestedness of Akerman in respect of its representation of the Debtors herein.  To the extent that a further conflicts search or a search of additional entities returns results indicating an adverse relationship, this Declaration will be supplemented.

4.      Akerman's client and adverse party conflicts check system is comprised of records regularly maintained in the course of business by Akerman, and it is the regular practice of Akerman to make and maintain these records.  The system reflects entries that are noted at the time the information becomes known by persons whose regular duties include recording and

2

maintaining this information.  I regularly use and rely upon the information contained in the system in the performance of my duties with Akerman and in my practice of law.

5.    Neither I, Michael I. Goldberg, nor Akerman holds nor represents any interest adverse to the Debtors and are disinterested persons as required by 11 U.S.C. § 327(a) and within the scope and meaning of Section 101(14) of the Bankruptcy Code.

6.    Neither I, nor Akerman, have or will represent any other entity in connection with these cases, except as follows:

      (a)    Akerman represents Branford Chain, Inc. and certain of its affiliates ("BC").  BC is an equity interest holder in Debtor. Akerman has in the past and currently represents and advises BC in a variety of matters, including representation of BC relating to its investment in TJ.  Akerman has obtained a signed waiver of conflicts from BC.

7.    Neither I, nor Akerman, will accept any fee from any other party or parties in these cases, except the Debtors-In-Possession, unless otherwise authorized by the Court.

8.    According to Akerman's records, Akerman was engaged by the Debtors for restructuring services on April 26, 2020 and in connection therewith received an initial retainer from Debtor, TOOJAY'S MANAGEMENT LLC in the amount of $800,000 (the "Prepetition Retainer"), in the amount of $800,000 (the "Prepetition Retainer"), of which amount $62,000 (a total of $2,000 for each of the cases of Debtors and the Filing Affiliates) is a retainer to cover filing fees and other costs, and the remaining $738,000 is to cover professional fees in the Debtors' and Filing Affiliates' cases.  Of the Prepetition Retainer, Akerman has earned $57,572.48 at the time of the filing of the Petitions.  All post-petition fees and expenses incurred by Akerman, in excess of the Prepetition Retainer, shall be paid from a portion of the Debtors'

cash collateral and future revenues upon approval of the Court. A copy of the executed engagement letter is attached as **Exhibit "1"** hereto.

9.      The professional fees and costs to be incurred by Akerman in the course of its representation of the Debtors in this case shall be subject in all respects to the application and notice requirement of 11 U.S.C. §§ 330 and 331 and Fed. R. Bank. P. 2014 and 2016.

10.      The hourly rates for the attorneys at Akerman range from $265 to $800 per hour. The hourly rates of Michael I. Goldberg and Eyal Berger, the attorneys who will be principally working on this case, are $725 and $550, respectively. These rates represent courtesy discounts of $60 and $50, respectively, off of normal hourly rates. The hourly rates for the paraprofessionals at Akerman range from $200 to $275. Akerman reserves the right to increase its hourly rates in accordance with its normal and customary business practices.

11.      There is no agreement of any nature as to the sharing of any compensation to be paid to Akerman, except between the attorneys of Akerman. No promises have been received by Akerman, nor any member or associate thereof, as to compensation in connection with these cases other than in accordance with the provisions of the Bankruptcy Code.

12.      No attorney at Akerman holds a direct or indirect equity interest in the Debtors, including stock or stock warrants, or has a right to acquire such an interest.

13.      No attorney at Akerman is or has served as an officer, director or employee of the Debtors within two years before the Petition Date.

14.      No attorney at Akerman is in control of the Debtors or is a relative of a director, officer or person in control of the Debtors.

15.      No attorney at Akerman is a general or limited partner of a partnership in which the Debtors are also a general or limited partner.

4

52882247;2

16.     No attorney at Akerman is or has served as an officer, director or employee of a financial advisor that has been engaged by the Debtors in connection with the offer, sale or issuance of a security of the Debtors within two years before the Petition Date.

17.     No attorney at Akerman has represented a financial advisor of the Debtors in connection with the offer, sale or issuance of a security of the Debtors within three years before the Petition Date.

18.     No attorney at Akerman has any other interest, direct or indirect, that may be affected by the proposed representation.

19.     Except as set forth herein, no attorney at Akerman has had or presently has any connection with the above-captioned Debtors or the estate on any matters in which Akerman is to be engaged, except that I, Akerman or our attorneys may represent or may have represented certain of the Debtors' creditors in matters unrelated to this case.

20.     Specifically, a search of Akerman's conflicts check system revealed the following matters, which do not impair my or Akerman's disinterestedness or constitute any conflict of interest:

(a)     Truist Bank ("Truist") is a creditor of Debtor TOOJAY'S MANAGEMENT LLC.  Akerman represents Truist and certain of its affiliate in matters wholly unrelated to this bankruptcy case.  The Debtors do not anticipate any contested matters with Truist and to the extent any arise, the Debtors' estates will retain special conflicts counsel to address.

(b)     Pepsico, Inc. is a potential creditor of Debtors. Akerman has in the past represented and/or currently represents Pepsico and certain of its affiliate in matters wholly unrelated to this bankruptcy case.

(c)    Ken Turner is a potential creditor of Debtors.  Akerman may or may not have in the past represented and/or currently represents Ken Turner in matters wholly unrelated to this bankruptcy case.

(d)    Jessica Hill is a potential creditor of Debtors.  Akerman may or may not have in the past represented and/or currently represents Jessica Hill in matters wholly unrelated to this bankruptcy case.

(e)    Additional persons who are potential creditors of Debtor, and who Akerman may or may not have in the past represented and/or currently represents in matters wholly unrelated to this bankruptcy case, are attached as **Exhibit "2."**

21.    In the event and to the extent that the Debtors are involved in litigation with a conflicted party, the Debtors will utilize conflict counsel in regard to such litigation and Akerman will not be involved in any such litigation.

This concludes my declaration.

### **28 U.S.C. § 1746 Declaration**

I declare under penalty of perjury that the foregoing is true and correct.  Executed on April 29, 2020.

EYAL BERGER, ESQ.

# Exhibit 1

akerman

Michael I. Goldberg

Akerman LLP
Las Olas Centre II, Suite 1600
350 East Las Olas Boulevard
Fort Lauderdale, FL 33301-2999

D: 954 468 2444
T: 954 463 2700
F: 954 463 2224
michael.goldberg@akerman.com

April 28, 2020

TJ Acquisition, LLC
3654 Georgia Avenue
West Palm Beach, FL 33405
Attention: Maxwell Piet & John S. Castle

     RE:    Engagement – Chapter 11

Gentlemen:

     We are pleased that you have asked Akerman LLP (the "Firm") to serve as your counsel. This letter will confirm our discussion with you regarding your engagement of this firm and will describe the basis on which our firm will provide legal services to you.

SCOPE OF REPRESENTATION

     For all purposes of this bankruptcy case, and otherwise, the client shall be TJ Acquisition, LLC, a Delaware limited liability company ("Parent"), Toojay's Management, LLC ("Management"), and each of the entities set forth in **Exhibit A** hereto as wholly owned subsidiaries of Management ("the "Subsidiaries" and together with Parent and Management, each, a "Company," and collectively, the "Companies"). All duties and responsibilities created and imposed by this agreement shall be owed to the Companies and not to any officer, agent, partnership, other corporation, trustee, employee or third party as individuals, unless expressly otherwise agreed, and then only after full and accurate disclosure to the court and other necessary parties. The parties to this agreement will immediately disclose any contemplated relationship to the United States Bankruptcy Court, the United States Trustee, all parties in interest, and all other parties entitled to receive notice.

     The Companies, by their board of managers and managing members, have authorized and empowered Michael I. Goldberg, Esq., Eyal Berger, Esq., and the law firm of Akerman LLP to commence and administer Chapter 11 bankruptcy cases in the United States Bankruptcy Court, utilizing such legal means as are available pursuant to the Bankruptcy Rules and the United States Bankruptcy Code, and other applicable statutes and case authorities. The Companies have prepared a corporate resolution authorizing the retention of the Firm and the filing of respective Chapter 11 bankruptcy cases. The Companies also warrant that they are in good standing with the State of Delaware and the State of Florida as applicable.

Page 2

_____

With your assistance, and the assistance of other employees of the Companies, we shall prepare and file with the bankruptcy court all necessary and appropriate documents required by applicable law in connection with the initiation and operation of Chapter 11 bankruptcy cases. Our retention includes representation of the Companies as required pursuant to applicable bankruptcy law and rules. We will appear at all hearings where the attorney for the debtor is required to appear, and we will keep you advised as to all events that take place or that we anticipate taking place in the bankruptcy court with regard to the pendency of the Chapter 11 cases. The Firm will not commence the filing absent receipt of an executed engagement letter, full funding of the requested retainer, and minimum information required to complete the filing.

Our representation of you in this matter is limited to legal matters only. We are not qualified to give advice on non-legal matters such as accounting matters, investment prospects or other business advice, and we suggest you obtain professionals in those fields if you wish advice in those areas. Further, we remind you that litigation is by its nature uncertain, and we have made no representations to you that you will prevail in this matter.

Controlling Parties Excluded:

The parties agree that the following categories of persons or entities as defined pursuant to the Bankruptcy Code are excluded from this representation: (a) officers, directors, stockholders, or other "controlling persons" in connection with any personal liability arising from any failure of the Companies to pay withholding and other taxes; (b) the filing of any proofs of claim or interest by such "controlling persons" in the bankruptcy case; (c) the defense of any claims asserted by a creditor, party in interest, creditors' committee or trustee against such "controlling persons" for the recovery of excess compensation, insider preferences, fraudulent transfers, setoffs, or for the equitable subordination of claims; (d) the assertion or right to assert that any property in the possession of the Companies is the personal property of such "controlling persons"; (e) any effort on the part of such "controlling persons," either directly or through another person or entity, to purchase any of the property of the estate from the debtor-in-possession or trustee if a sale not in the ordinary course of business is authorized by the court; (f) the assertion by any "controlling persons" of any privilege against self-incrimination; and (g) any other matters which in the exercise of the professional judgment of counsel may create a conflict of interest, an appearance of impropriety, or a legal or moral position not otherwise approved by the Code of Professional Responsibility. If such conflict appears, the Firm will notify the court and the United States Trustee as soon as practicable.

Uncertain Outcome:

We have discussed with you the various legal and factual considerations involved in the Companies' representation in these Chapter 11 cases. It is our goal to assist the Companies in their reorganization efforts and to file and have approved a disclosure statement in connection with a plan of reorganization. It is our further goal that such plan of reorganization be approved by the requisite number of creditors and by the bankruptcy court, and that the plan of

Page 3

_____

reorganization, as approved, be fully consummated. However, we cannot provide to you any guaranty of the results that may eventually occur. Furthermore, because of the various uncertainties involved in Chapter 11 proceedings, we cannot guaranty to you any maximum fee that may be incurred by our firm as a result of our representation of the Companies in these Chapter 11 cases. We have discussed with you the various uncertainties related to Chapter 11 proceedings and you have acknowledged your understanding of the existence of those uncertainties.

Employment of Experts:

We understand that we will be authorized to employ, on your behalf, those experts, consultants, court reporters, investigators, and other persons that we may believe are necessary in the course of this representation.

FEES AND EXPENSES

General:

As we have also discussed, the Bankruptcy Code allows the attorney for the debtor to receive a retainer prior to the filing of the case but may not allow the debtor's attorney to be paid again until the expiration of the initial 120-day period after the case is filed. Accordingly, it is necessary for us to obtain a retainer that we believe will be sufficient to cover the fees and expenses that we expect to incur within the first several months of the case. We have determined that the retainer that we would request with respect to a Chapter 11 filing for the Companies would be in the amount of $800,000. This retainer would have to be paid in full prior to the filing of any case pursuant to Chapter 11 by our firm.

The retainer is held in trust by my firm and is billed against during the course of the case as permitted by the court. Billings are made on a monthly basis based upon our normal hourly rates for attorneys performing the services. My current hourly rate is $725.00. Although I would be the partner in charge of your case, I would delegate those matters which can be properly handled by associates and paralegals. I make decisions about delegation based upon the level of skill required for the task and in order to ensure the most efficient and cost effective representation of you individually. Paralegals' rates are generally from $200.00 to $300.00 per hour and associates' rates are generally $275.00 to $350.00 per hour. Partners' rates are from $450.00 to $800.00 per hour. All expenses which we incur in the representation of Companies in the Chapter 11 would be charged against the retainer as well. These would include, but would not be limited to, postage, copying, delivery charges when hand deliveries are necessary and/or Federal Express charges when overnight delivery is necessary, telecopying charges when it is necessary to telecopy items to expedite the handling of the case, long-distance telephone charges, mileage for any out-of-town travel, and any and all necessary and related expenses. We typically incur and pay on behalf of our clients a variety of out-of-pocket costs arising in connection with legal services. These include charges made by government agencies and service vendors as well

52885703;2

Page 4

as clerical charges.  Whenever such costs are incurred, we will carefully itemize and bill them. Typical of such costs are filing fees, deposition and transcript costs, witness fees, travel expenses (including meals, lodging and air fare), charges made by outside experts and consultants, including accountants, appraisers, and other legal counsel (unless arrangements for direct billing have been made), and charges for outside automated document production (word processing). We incur outside costs as agents for our clients and incur internal expenses on behalf of our clients, who agree that these costs will always be paid on a regular basis.

All attorneys' fees and expenses must be approved by the bankruptcy court based upon fee applications which we file periodically.  Those applications will contain a complete description of all of the services performed and the time spent performing same.  All items are itemized in the fee application.  Once the retainer has been consumed, we would seek authority pursuant to the Bankruptcy Code for you to pay such additional retainers and/or fees as are necessary to fully compensate our firm for its services in the Chapter 11 proceeding.

The parties agree that Akerman, LLP may, in its discretion, increase the scheduled hourly rates and costs of reimbursable expenses as necessary during the course of the engagement, subject to bankruptcy court approval.  Additionally, in the event that Akerman, LLP increases its rates or the costs of its reimbursable expenses to its other commercial clients, the higher rates shall be deemed substituted for the initial rates described in this agreement, subject to bankruptcy court approval.

The parties agree that Akerman, LLP is not prohibited from seeking approval from the bankruptcy court for additional compensation from the debtor's estate beyond the retainer amount and for enhancement of its compensation at rates higher than those scheduled in the agreement or in greater aggregate amount, whether on an hourly basis or a percentage basis as circumstances warrant.

The parties agree that the retainer/case advance is deemed a trust fund, to be deposited in Akerman's trust account.  If either the Companies or Akerman, LLP notifies the other in writing of its decision to terminate this representation, the balance of the retainer/case advance may be applied to all accrued but unpaid fees and expenses for the period before the effective date of termination, with the same type of accounting to the client and judicial review as provided for herein.  The balance of the retainer/case advance, if any, will be promptly returned to the Companies, the debtor-in-possession, or the trustee, as appropriate.

We reserve the right to make at your expense and retain copies of all documents generated or received by us in the course of our representation.  When you request documents from us, copies that we generate also shall be made at your expense, including both professional fees for time expended in reviewing files to be copied and reproduction costs.

Disputes Over Billing/Additional Retainer:

Page 5

You agree to notify us in writing if you dispute any billing entry or computation. If you fail to do so within thirty (30) days after the date of a statement, all entries shall be deemed by both you and us to be fair and correct.

Our customary procedure is to bill promptly after the first of the month for services rendered and costs incurred during the previous month. We require all statements to be paid within two weeks from the date of the invoice. Because services will be rendered to the Companies in the context of a Chapter 11 case, except as may otherwise be permitted by the Bankruptcy Court, fees and expenses will be applied for and approved by the bankruptcy court before being billed to and paid by the Companies. In the event of the depletion of the retainer/case advance, the Companies agree to pay to the Firm the amount due pursuant to any statement submitted by the Firm, within fourteen (14) days after order of the bankruptcy court approving such fees and expenses. To the extent that any fees or expenses are not paid when due, the Firm shall have the right to withdraw as counsel, as noted elsewhere in this engagement letter.

Joint and Several Liability:

Each of the undersigned clients agrees it shall be jointly and severally liable to the Firm for all sums due pursuant to the terms of this agreement. The undersigned agree to pay all costs of collecting any sums due pursuant to the terms of this agreement including attorneys' fees (including any attorneys' fees charged by the Firm) if it brings an action to collect any sums due pursuant to the terms of this agreement.

Express Attorneys' Lien:

By accepting this letter, you acknowledge and agree that we shall have a lien to secure your obligations to us upon any proceeds recovered pursuant to any Companies' claims.

Arbitration:

If you disagree with the amount of our fee, please take up any questions with your principal attorney contact or with the Firm's managing partner. Typically, such disagreements are resolved to the satisfaction of both sides with little inconvenience or formality. In the event of a fee dispute which is not readily resolved, you have the right to request arbitration pursuant to supervision of the state or local bar associations for the jurisdictions in which we practice, and we, the Firm and the Companies, agree to participate fully in that process.

Page 6

_____

## DISCLOSURE OF CONFLICTS

**General Conflicts:**

As we have discussed, you are aware that the Firm represents many other companies and individuals. The Companies agree that we may continue to represent or may undertake in the future to represent existing or new clients in any matter that is not substantially related to our work for you even if the interests of such clients in those other matters are directly adverse. We agree, however, that your prospective consent to conflicting representation contained in the preceding sentence shall not apply in any instance where, as a result of our representation of you, we have obtained proprietary or other confidential information of a non-public nature, that, if known to such other client, could be used in any such other matter by such client to your material disadvantage. (You should know that, in similar engagement letters with many of our other clients, we have asked for similar agreements to preserve our ability to represent you.)

You have agreed that our representation of the Companies in the matter described in this engagement letter does not give rise to an attorney-client relationship between the Firm and any of the Companies' affiliates. You also have agreed that the Firm during the course of its representation of the Companies will not be given any confidential information regarding any of the Companies' affiliates. Accordingly, representation of the Companies in this matter will not give rise to any conflict of interest in the event other clients of the Firm are adverse to any of the Companies' affiliates.

**Attorney-Client Privilege:**

While confidential communications between a client and counsel are privileged, the Companies should be aware that the filing of a bankruptcy case may severely impact upon this attorney-client privilege. Specifically, if a trustee is appointed in any bankruptcy case concerning a corporate debtor, the trustee will be able to obtain from us or any other counsel to the Companies and disclose to others information communicated by the Companies to counsel.

## DUTIES OF CLIENT

**General:**

The officers of the Companies have agreed to cooperate fully with us in providing to us all documentation and information which we may request in the course of our representation to the Companies in these Chapter 11 cases. The Companies agree to timely execute all necessary and appropriate documentation that may be required in the course of our representation and to meet with us upon our reasonable request. The officers of the Companies are expected to be available to appear, in person, at all required depositions, examinations, conferences, hearings and meetings. Shortly after the case is filed, there will be an organizational meeting with a representative of the United States Trustee, and soon after that there will be a first meeting of

52885703;2

Page 7

creditors pursuant to § 341(a) of the Bankruptcy Code. You or another officer of the Companies are required to attend both of these meetings with us.

Preparation of Statement of Affairs/Schedules:

You have agreed to have your personnel assist in answering fully and completely the questionnaire that we have given you that provides all of the information needed to <u>fully</u> and <u>accurately</u> prepare the Schedules and Statement of Affairs. You will also prepare for us such other information, schedules, spread sheets and projections as we may require to properly represent you.

Address:

You agree to keep us informed as to your whereabouts at all times so that in the event we need to contact you we will be able to do so expeditiously.

Detail:

The purpose of this section of this letter is to outline the Companies' legal obligations while operating in reorganization pursuant to Chapter 11 of the Bankruptcy Code. A corporation that has filed a petition for reorganization pursuant to Chapter 11 is permitted to continue its business as a debtor-in-possession unless the court should order otherwise. 11 U.S.C. §1107-1108.

A debtor-in-possession is authorized only to carry out those functions that are in the "ordinary course of business," meaning what has become normal or usual for the Companies. If a proposed transaction, such as a substantial sale of property or large investment, falls outside the ordinary course of business, prior court authorization is required. As your counsel we must, therefore, file an appropriate application and obtain a court order for any business transaction which you may desire that is out of the ordinary course of business. If you have any doubts regarding whether a particular transaction is in the ordinary course of your business, you should immediately consult with us.

The debtor-in-possession must do nothing to unreasonably diminish the value of the reorganization estate. In other words, donations, new mortgages, or security interests, large transactions, salary increases or bonuses, or substantial investments would be subject to close scrutiny by the court and all of your creditors, and should not be done without prior court approval. Preservation and maintenance of assets is critical. Good relations with creditors throughout the reorganization proceedings, regardless of your personal feelings, are also essential. The following is a list of guidelines that should be strictly followed in carrying out duties as debtor-in-possession:

Page 8

---

•       Do not retain any professional person, independent contractor, or consultant, or agree to compensate any such persons without consulting legal counsel and obtaining prior court approval.

•       Do not pay any debts which were incurred prior to the filing of the petition.  If you believe that certain debts must be paid, inform counsel before making any such payments, so that court approval can be sought if necessary.

•       Maintain a separate account or set aside appropriate moneys for payment of all taxes accruing after the filing of the petition.

•       Maintain insurance on all property and change your coverages to insure your interest as debtor-in-possession.  The insurance should afford full protection against loss and include fire, theft, personal injury (including umbrella liability), and natural disaster coverage.

•       Ensure that adequate security and fire protection are provided for all assets.

•       Make sure that any payments to creditors are being credited on your books and records as post-petition debts and not pre-petition debts.

•       Maintain books and records in good order and on a current basis.

•       Set aside post-petition FICA withholding in a separate account on books and records, concerning any employees.

•       Check with legal counsel before releasing any information regarding your reorganization proceeding.  Favorable impressions, including press, are important to public and creditor relations.

•       Give notice of your reorganization case to all parties who have sued you.  You must advise legal counsel of all pending litigation, and, to the best of our knowledge, this has already been provided to us.

•       Inform legal counsel immediately if any governmental agency, federal or state, seeks to conduct an investigation of your business affairs.

•       Insider, affiliate and family transactions between one another are ordinarily suspect.  If a proposed transaction with an insider becomes necessary, the terms and conditions of such transaction should be fully disclosed to all interested parties, and **prior** court approval should be sought.

52885703;2

Page 9

• Change all bank accounts to reflect your particular status as debtor-in-possession.

• Maintain debtor-in-possession accounts only in authorized depositories and accounts. Consult legal counsel as to whether a particular bank is an authorized depository. Transfer all prior accounts to an authorized depository and identify them as debtor-in-possession accounts.

• Deposit accounts in banks should not exceed $250,000 at any time (maximum account of FDIC insurance). Additional deposits in a single account must be secured by the depository bank pledging sufficient securities to the Federal Reserve.

• Notify all current depository banks of the commencement of this case.

• Always be prepared to explain and document all withdrawals from any accounts opened after filing of the bankruptcy petition.

• Special accounts that are not authorized by statute must be authorized by the bankruptcy court. Please consult with legal counsel about this.

• Establish a procedure regarding check signing authority and justification for expenditures.

• Segregate trust funds, such as deposits or taxes, from operating funds, and maintain all trust funds in designated depository accounts. Under no circumstances should tax or other trustee funds be commingled with the funds of the debtor-in-possession operating accounts.

• Do not give any assurances of payments to creditors who were in existence prior to filing of the petition.

• Do not incur any liabilities that cannot be paid; these liabilities are administrative priority expenses.

• Establish accounting and bookkeeping procedures to allow for immediate access to financial information regarding cash and security positions. As debtor-in-possession, you are required to file monthly reports with the court, summarizing cash transactions and other financial data.

• Avoid excessive expenditures, particularly for unnecessary leased luxury items (cars, special office equipment, etc.).

Page 10

- Do not make gifts to charity, or anyone else.

- Do not offer, give, or accept any payments that might be interpreted as bribes or wrongful inducements.

- Do not make transfers for other than reasonably equivalent value or outside the normal scope of your business.

- Do not make advances to employees other than actual, anticipated expenses.

- Maintain complete accountings of all cash expenditures, including vouchers and receipts.

- Do not engage in speculative ventures or activities.

- All capital purchases for vehicles, furniture and machinery should be avoided, unless in the "ordinary course of business." Certain capital purchases may be made if reasonably necessary, or if in the ordinary course of business.

- Provide legal counsel with complete information regarding any proposed sale of assets, sufficiently in advance to permit consultation.

- Assets that are unnecessary to the operation of the Companies' business and are depreciating in value may have to be sold at a fair price. Bankruptcy court approval must be obtained for any such sale.

- Any proposed sale of real estate requires notice of a hearing and an appearance before the court.

- Legal inquires from creditors should be immediately referred to your legal counsel.

- Extending credit to insiders, relatives, or employees may subject you to criticism. Extending credit in a sale not in the ordinary course of business requires prior court approval.

- Do not borrow, obtain credit, or grant any lien or security interest without court approval.

- With regard to your secured creditors:

52885703;2

Page 11

A.    Do not permit any repossessions of your property without court order;

B.    Make no payment on any pre-petition debts to the Internal Revenue Service without court order (required installment payments may be made under certain limited circumstances);

C.    Payments on other secured indebtedness may be made only in accordance with court order;

D.    Do not use "cash collateral" without prior court approval. "Cash collateral" consists of cash, negotiable instruments, documents of title, securities, deposit accounts and proceeds of accounts receivable which have been pledged or serve as collateral for a pre-petition debt; and

E.    All valid post-petition liens are enforceable.

•    Do not pay pre-petition taxes. If the Companies wish to pay certain pre-petition taxes to avoid penalties that may accrue, prior court approval should be sought.

•    Pay all post-petition taxes on a current basis.

•    All FICA, without and unemployment taxes accruing after the filing date must be deposited on a current basis.

•    Contact appropriate authorities regarding state and local taxes to ensure that proper procedures are followed.

•    All tax returns normally required must still be filed on a regular basis.

•    Post-petition relations with employees should be maintained on a normal basis. Payrolls should be made on time, and taxes should be paid in accordance with the Internal Revenue Service special requirements.

•    Within 20 days after filing the petition, you should write a letter to all utility services, notifying them of your Chapter 11 filing date and giving them adequate assurance of future payment. Explain that you intend to pay all post-filing utility bills in a timely fashion. Contact legal counsel immediately if any utility company seeks to cut off service, or if there is any doubt about continuation of service.

Page 12

_____

- Review executory contracts (to be performed) and unexpired leases to determine whether or not we should notify the court that such are going to be rejected. Consult with legal counsel and do not perform under these contacts until appropriate arrangements have been made through legal counsel.

- Do not make any pre-petition payments without court order. All post-petition lease payments should be made on a current basis.

- Contact legal counsel if you wish to retain any professionals such as attorneys, accountants, consultants or appraisers. As debtor-in-possession, you are liable in state and federal courts for any post-petition wrongdoing.

- Keep legal counsel informed of all potential litigation.

- Report to legal counsel any transfer from the Companies within the last year, for which little or no consideration was received in return.

- Report to legal counsel any payment of a pre-petition debt after the filing of the petition.

- Report to legal counsel any payment on or giving of security for an unsecured debt within the last year.

The foregoing outlines many of the responsibilities of a debtor-in-possession. Some of the debtor's duties have previously been performed, others simply are not applicable to you.

One very important aspect of the Chapter 11 is remaining current on your expenses after you enter into a Chapter 11. This means, especially, taxes, utilities, suppliers, wages, and any health or insurance claims you have for your employees. All expenses must be met. On the other hand, you are prevented from paying any past-due debts to any unsecured creditors. Any payment to them at this point may constitute a preferential transfer and may diminish the confidence creditors will have in your plan. There will be a gray area as far as people who have shipped goods to you or are currently providing services and will bill you immediately before or after filing. This will have to be met on a case-by-case basis, and I recommend you bring these to my attention.

Payments made without proper authorization of the court or for improper purposes may have to be repaid by you as debtor-in-possession. Personal liability for officers or directors also may result if there is a willful or deliberate violation of these fiduciary duties by the Companies. In addition, failure to carry out these duties of a debtor-in-possession may lead to the appointment of a separate trustee or conversion of your case to a Chapter 7 liquidation of assets.

Page 13
_____

Finally, please be advised that you will have to submit a monthly statement of income and expenditures to the court. This financial report must contain various information which you may include in the operating guidelines to be provided to you by the United States Trustee's office. The report and all other reports should be provided to me for filing by the 15th of the month following; i.e. the April monthly report must be filed by May 15. Once you have completed each report, please contact us and send the form to us. We will retain a copy in our files and see that copies are filed with the bankruptcy court and the United States Trustee's office.

TERMINATION

Either of us may terminate the engagement at any time for any reason by written notice, subject on our part to applicable rules of professional conduct. In the event that we terminate the engagement, we will take such steps as are reasonably practicable to protect your interests in the above matter (and, if you so request, we will suggest to you possible successor counsel and provide it with whatever papers you have provided to us). If permission for withdrawal is required by a court, we will promptly apply for such permission, and you agree to engage successor counsel to represent the Companies.

Unless previously terminated, our representation of the Companies will terminate upon our sending you our final statement for services rendered in this matter. Following such termination, any otherwise non-public information you have supplied to us which is retained by us will be kept confidential in accordance with applicable rules of professional conduct. At your request, your papers and property will be returned to you promptly upon receipt of payment for outstanding fees and costs. Our own files, including lawyer work product, pertaining to the matter will be retained by the Firm. All such documents retained by the Firm will be transferred to the person responsible for administering our records retention program. For various reasons, including the minimization of unnecessary storage expenses, we reserve the right to destroy or otherwise dispose of any such documents or other materials retained by us within a reasonable time after the termination of the engagement.

Withdrawal:

The Firm reserves the right to withdraw as counsel, pursuant to appropriate rules, at such time as fees and/or expenses remain unpaid for more than fourteen (14) days, or if in its sole discretion it deems itself insecure as to payment of existing or future fees and/or expenses. The Companies hereby waive any objection that it may have as to the motion by the Firm to withdraw as counsel in these proceedings, and consents to such withdrawal.

Once again, thank you for the confidence you have shown in us by selecting our firm to represent you. We will do our best for you.

Very truly yours,

52885703;2

Page 14
_____


Michael I. Goldberg
For the Firm

Enclosure


The undersigned hereby accepts the terms set forth in this engagement letter and hereby engages Akerman LLP as set forth in this letter.

DATED: April 28, 2020                    **TJ ACQUISITION, LLC**

By:_____
       Name: John S. Castle
       Title: Authorized Person


DATED: April 28, 2020                    **TOOJAY'S MANAGEMENT LLC**, on behalf of
                                         itself and on behalf of each of the Subsidiaries in its
                                         capacity as the manager of each of them



By:_____
       Name: Maxwell Piet
       Title: President and Chief Executive Officer

52885703;2

Page 14
_____

Michael I. Goldberg
For the Firm

Enclosure

       The undersigned hereby accepts the terms set forth in this engagement letter and hereby engages Akerman LLP as set forth in this letter.

DATED: April 28, 2020              **TJ ACQUISITION, LLC**

By:_____
       Name: John S. Castle
       Title: Authorized Person

DATED: April 28, 2020              **TOOJAY'S MANAGEMENT LLC**, on behalf of itself and on behalf of each of the Subsidiaries in its capacity as the manager of each of them

By:_____
       Name: Maxwell Piet
       Title: President and Chief Executive Officer

**Exhibit A**
**Subsidiaries**

| # | Subsidiary | Type and Jurisdiction of Organization |
|---|---|---|
| 1 | TooJay's Bakery & Commissary, L.L.C. | Florida LLC |
| 2 | TooJay's Palm Beach, L.L.C. | Florida LLC |
| 3 | TooJay's Lake Worth, L.L.C. | Florida LLC |
| 4 | TooJay's Jupiter, L.L.C. | Florida LLC |
| 5 | TooJay's Polo, L.L.C. | Florida LLC |
| 6 | TooJay's Stuart, L.L.C. | Florida LLC |
| 7 | TooJay's Altamonte, L.L.C. | Florida LLC |
| 8 | TooJay's of West Boca, L.L.C. | Florida LLC |
| 9 | TooJay's Colonial, L.L.C. | Florida LLC |
| 10 | TooJay's at Dr. Phillips, L.L.C. | Florida LLC |
| 11 | TooJay's Vero, L.L.C | Florida LLC |
| 12 | TooJay's of Lake Mary, LLC | Florida LLC |
| 13 | TooJay's Waterford Lakes, L.L.C. | Florida LLC |
| 14 | TooJay's Coral Springs, L.L.C. | Florida LLC |
| 15 | TooJay's of Sarasota, L.L.C. | Florida LLC |
| 16 | TooJay's Plantation, L.L.C. | Florida LLC |
| 17 | TooJay's Glades, L.L.C. | Florida LLC |
| 18 | TooJay's of The Villages, L.L.C. | Florida LLC |
| 19 | TooJay's Downtown Gardens, L.L.C. | Florida LLC |
| 20 | TooJay's VLG II, L.L.C. | Florida LLC |
| 21 | TooJay's of Ocoee, L.L.C. | Florida LLC |
| 22 | TooJay's.com, L.L.C. | Florida LLC |
| 23 | TooJay's of Lakeland, L.L.C. | Florida LLC |
| 24 | TooJay's Downtown Tampa, L.L.C. | Florida LLC |
| 25 | TooJay's Villages III, L.L.C. | Florida LLC |
| 26 | TooJay's Hallandale, L.L.C. | Florida LLC |
| 27 | TooJay's West Palm Beach, L.L.C. | Florida LLC |
| 28 | TooJay's Wellington Commons, L.L.C. | Florida LLC |
| 29 | TooJay's Boynton Oakwood Square, LLC | Florida LLC |
| 30 | TooJay's Pembroke Pines, L.L.C. | Florida LLC |
| 31 | TooJay's Naples, LLC | Florida LLC |
| 32 | TooJay's N Ft. Lauderdale, L.L.C. | Florida LLC |
| 33 | TooJay's Dania Beach, L.L.C. | Florida LLC |

| Exhibit 2 |
|---|
| AFCO |
| AIRGAS DRY ICE |
| AM PRODUCTION SERVICES INC |
| AON RISK SERVICES NORTHEAST INC |
| AT&T |
| BETANCOURT, JOSE, JR. |
| BOARD OF COUNTY COMMISSIONERS PBCTY |
| BREAKTHRU MARKETING LLC |
| BROWN, TERRY |
| CANON FINANCIAL SERVICES INC |
| CANON SOLUTIONS |
| CARGILL FOOD DIST |
| CHENEY BROS INC |
| CIGNA |
| CIT |
| CITIZENS BANK |
| CITY OF BOYNTON BEACH |
| CITY OF BOYNTON BEACH PYMT PROCESSING CENTER |
| CITY OF BOYNTON BEACH UTILITIES |
| CITY OF HALLANDALE BEACH |
| CITY OF LAKE WORTH |
| CITY OF LAKE WORTH LICENSE & PERMITS |
| CITY OF ORLANDO BUSINESS TAX |
| CITY OF PALM BEACH GARDENS LICENSE |
| CITY OF PEMBROKE PINES |
| CITY OF PEMBROKE PINES TAX |
| CITY OF PLANTATION |
| CITY OF PLANTATIONTAX |
| CITY OF WEST PALM BEACH |
| CITY OF WEST PALM BEACH FIRE RESCUE |
| CITY OF WPB FINANCE DEPT ALARM RENEW |
| COMCAST 71211 |
| COVERALL NORTH AMERICA INC |
| CUSTOM CULINARY, INC. |
| DADE PAPER CO |
| DANIA LIVE JV LLC |
| DDR CORP |
| DIRECTV |
| DUKE ENERGY |
| EAGLE BENEFITS BY DESIGN |
| ENVIRO-MASTER INTL FRANCHISE, INC. |
| EQUITY ONE INC |
| F P & L |
| FEDERAL EXPRESS CORP |
| FEDERAL INSURANCE COMPANY |

| |
|---|
| FLORIDA PUBLIC UTILITY |
| FORD MOTOR CREDIT CO |
| GARDA CL SOUTHEAST INC |
| GOLD COAST BEVER. LLC |
| GORDON FOOD SERVICE INC |
| GRAY ROBINSON PA |
| HADASSAH THE GREATER VENICE CHAPTER |
| HCI CABINETRY DIVISION INC |
| HIGHWOODS REALTY LIMITED PARTNERSHIP |
| IPFS CORPORATION |
| JAMESTOWN PCS LP |
| JOHNSON CONTROLS SECURITY SOLUTIONS |
| LAKE APOPKA NATURAL GAS DISTRICT |
| LEVIN, STEPHEN |
| LINKEDIN CORPORATION |
| MCKEE, BOB, LAKE COUNTY TAX COLLECTOR |
| MESIROW INSURANCE SERVICES INC. |
| MIDLAND FUDING LLC AS SUCCSSO |
| NEC FINANCIAL SERVICES LLC |
| NEW CARBON COMPANY LLC |
| ORLANDO UTILITIES COMM |
| PACKAGING CORP OF AMERICAN |
| PALM BEACH COUNTY CHAPTER RIMS |
| PALM BEACH COUNTY SHERIFF'S OFFICE ALARM |
| PALM BEACH FIRE RESCUE |
| PEREZ, CARLOS |
| PITNEY BOWES GLOBAL FINANCIAL SER |
| PITNEY BOWES GLOBAL FINANCIAL SERVICES LLC |
| POWERMAT INC |
| PREMIER PRODUCE |
| PURATOS CORPORATION |
| REPUBLIC SERVICES #695 |
| RIVERSIDE PAPER CO., INC. |
| ROSS, MICHAEL |
| ROSS, MIKE |
| RPP PALM BEACH PROPERTY LP |
| RYDER TRANSPORTATION SERVICES |
| SABAL DESIGN LLC |
| SEABREEZE PUBLICATIONS |
| SHOES FOR CREWS,INC. |
| SHOPCORE PROPERTIES LP |
| SMG |
| SOUTHERN GLAZERS WINE AND SPIRITS LLC |
| SOUTHGATE MALL OWNER LLC |
| STANDARD PARKING |
| STAPLES BUSINESS ADVANTAGE |
| SUN LIFE FINANCIAL |

| |
|---|
| SYSCO FOOD SERVICES |
| TECO PEOPLES GAS |
| THE C.F. SAUER COMPANY |
| THE REFUGE A HEALING PLACE LLC |
| THE VILLAGES GOLF CARS |
| THE VILLAGES OPERATING COMPANY |
| THOMAS REUTERS TAX & ACCOUNTING PROFESSI |
| T-MOBILE |
| TOWN OF PALM BEACH PLANNING ZONING |
| UCF ALUMNI CENTER |
| UCF ARENA |
| UCF CONVOCATION CORPORATION |
| UCF STUDENT UNION |
| UNITED STATES TREASURY |
| VERIZON DALLAS |
| VILLAGE CENTER CDD-UTILITY |
| WASHINGTON PRIME GROUP LP |
| WASTE MANAGEMENT INC OF FLORIDA 105453 |
| WASTE PRO-ORLANDO |
| WEX BANK |
| ZENITH INSURANCE |
| ZENITH INSURANCE COMPANY |

Exhibit B

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**West Palm Beach Division**
www.flsb.uscourts.gov

In re:                                                                Chapter 11

TOOJAY'S MANAGEMENT LLC,                          Case No. 20-14792-EPK

                    Debtor.
_____/

**ORDER ON DEBTORS' EMERGENCY APPLICATION FOR**
**APPROVAL, ON AN INTERIM AND FINAL BASIS, OF EMPLOYMENT**
**OF MICHAEL I. GOLDBERG, EYAL BERGER, AND THE LAW FIRM**
**OF AKERMAN LLP AS GENERAL BANKRUPTCY COUNSEL FOR THE**
**DEBTORS-IN-POSSESSION EFFECTIVE AS OF THE PETITION DATE [ECF NO.   ]**

**THIS MATTER** came before the Court on _____, 2020 at ___:00 a.m. upon

the application (the "Application") of Debtors,[1] for entry of an interim and final order,

pursuant to 11 U.S.C. §§ 327(a) and 330 and Bankruptcy Rules 2014(a), 2016 and 6003,

authorizing the Debtors to employ and retain Michael I. Goldberg, Esq. ("Goldberg"), Eyal

_____

[1] All terms not defined herein shall have the meaning ascribed in the Application.

52884250;1

Berger, Esq. ("Berger") and the law firm of Akerman LLP ("Akerman") under a general retainer as its restructuring and general bankruptcy attorneys in their and their Filing Affiliates' Chapter 11 cases (ECF No. ___).  The Court, finding that good, adequate and sufficient cause has been shown to justify the entry of this order; and it appearing that the relief requested is in the best interests of the Debtors' estates, their creditors and other parties in interest; and the Court having jurisdiction to consider the Application and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; and consideration of the Application and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having reviewed the Application and the Declaration of Eyal Berger, a shareholder of Akerman, attached to the Application (the "Berger Declaration"); and the Court being satisfied based on the representations made in the Application and the Berger Declaration that, (a) Goldberg and Berger are duly qualified under Local Rule 2090-1(A) to practice in this Court, (b) Goldberg, Berger and Akerman do not hold or represent an interest adverse to the Debtors' estates, and (c) Goldberg, Berger and Akerman are "disinterested persons" as defined in section 101(14) of the Bankruptcy Code and as required by section 327(a) of the Bankruptcy Code, and have disclosed any connections with parties set forth in Bankruptcy Rule 2014; and due and proper notice of the Application having been provided, and it appearing that no other or further notice need be provided; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED as follows:

1.    The Application is GRANTED effective as of the Petition Date.

2.    The Debtors are authorized to employ and retain Michael I. Goldberg, Eyal Berger and the law firm of Akerman as general counsel in these Chapter 11 cases to represent

them and their Filing Affiliates in general bankruptcy matters and other proceedings that may arise during the course of the representation as set forth in the Application and in accordance with the terms of this Interim Order.

3.      The Court approves the terms in the engagement letter attached to the Berger Declaration on an interim basis.

4.      Akerman shall maintain contemporaneous time records with the rendition of services, and shall apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with the Debtors' and Filing Affiliates Chapter 11 cases in compliance with the applicable provisions of the Bankruptcy Code, Federal Rules of Bankruptcy Procedure, Local Rules, Guidelines for Fees Applications for Professionals in the Southern District of Florida in Bankruptcy Cases, and such other applicable procedures and orders of this Court.

5.      This Order shall remain in effect for a period of thirty days from the date the Court grants to Motion, or until otherwise ordered by the Court.

6.      This Court shall hold a final hearing on this Motion on _____, 2020 at _____ a.m./p.m. at the Flagler Waterview Building, 1515 North Flagler Drive, Suite 801, West Palm Beach, FL 33401.

                                                ###

Submitted By:
Eyal Berger, Esq.
**AKERMAN LLP**
*Counsel for Debtors-in-Possession*
350 East Las Olas Blvd., Suite 1600
Fort Lauderdale, Florida 33301
Tel:  954-463-2700
Fax:  954-463-2224
eyal.berger@akerman.com
[Attorney Berger is hereby directed to serve a conformed copy of this order on all interested parties and file a certificate of service conforming with Local Rule 2002-1(F).]